FILED
COURT OF APPEALS
DIVISION II

2013 JUL 16 AM 8: 44

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42179-8-II |
| Respondent, | |
| v. | |
| CHRISTOPHER ISRAEL SAUNDERS, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — Christopher Israel Saunders appeals his jury trial conviction and sentence for failure to register as a sex offender.[1] He argues that the trial court erred when it denied his motion to dismiss based on CrR 4.1 speedy arraignment and CrR 3.3 time-for-trial violations. In a pro se Statement of Additional Grounds for Review[2] (SAG), he asserts that (1) the trial court erred when it denied his second motion to dismiss for time-for-trial violations in which he challenged several continuances, (2) the trial court violated his constitutional speedy trial rights, (3) the trial court erred in not allowing him access to standby counsel when he elected to proceed to trial pro se, (3) the trial court erred in allowing the State to present evidence

---

[1] Former RCW 9A.44.130(6)(b) (LAWS OF 2008, ch. 230, § 1).

[2] RAP 10.10.

of his previous convictions for failure to register as a sex offender, (4) the evidence was insufficient to support his conviction, and (5) his total sentence exceeds the statutory maximum for the offense. Finding no reversible error, we affirm.

FACTS

I. BACKGROUND

Saunders is a sex offender required to register. In December 2009, he registered as a transient with the Pierce County Sheriff's Department. Because he was a transient, he was required to report weekly. Former RCW 9A.44.130(6)(b) (LAWS OF 2008, ch. 230, § 1). Saunders registered as required until March 17, 2010, but he failed to report on or after March 24.

At this same time, Saunders was also on community custody supervision following a previous failure to register conviction. As a condition of his community custody, he was not to consume any drugs. On March 22, after a March 18 urine sample tested positive for methamphetamine, the Department of Corrections (DOC) issued a warrant for Saunders's arrest. Officers arrested Saunders on May 6. The next day, the DOC transported him to a DOC facility in Snohomish County. The Snohomish County Superior Court found that Saunders had violated his community custody requirements and sentenced him to 150 days of confinement in DOC custody; he served this time in Snohomish County.

Meanwhile, on June 10, Pierce County charged Saunders with failing to register as a sex offender based on his failure to report on March 24. On June 11, the deputy prosecutor obtained a bench warrant for Saunders's arrest and entered the warrant into the Law Enforcement Support

Agency database. The DOC placed a hold on Saunders for transport to Pierce County for arraignment immediately upon the completion of his 150-day Snohomish County confinement.

Saunders was transported back to Pierce County on August 17. The trial court arraigned Saunders on the failure to register charge on August 18. The trial court scheduled a pretrial conference for August 31, an omnibus hearing for September 23, and the jury trial for October 11, 2010.

## II. SEPTEMBER 23, 2010 CONTINUANCE; FIRST MOTION TO DISMISS

At the September 23 omnibus hearing, Saunders's counsel requested a continuance to allow him to prepare for trial and to prepare a motion to dismiss addressing time for trial and speedy-arraignment issues that Saunders had raised. Saunders objected. The trial court continued the October 11 trial to November 15. Saunders refused to sign the September 23, 2010 order continuing trial.

On October 6, Saunders filed a pro se motion to dismiss alleging speedy arraignment and time-for-trial violations. Defense counsel filed a similar motion a week later. Saunders and his counsel both argued that the State had failed to exercise due diligence in bringing him to arraignment or to trial within the time limits set by CrR 3.3 and CrR 4.1.

At a hearing, the trial court considered both motions and heard from both defense counsel and Saunders. The trial court denied the motion to dismiss and entered the following written conclusions of law:

> 1.     The Court finds that CrR 3.3 is the applicable rule for examining defendant's claim of denial of right to speedy trial.
> 2.     The Court finds that, as the defendant was being held in the Snohomish County Department of Corrections facility to serve a sentence on a violation of supervision conditions, he was not considered to be detained in jail or

3

subjection [sic] to conditional release with regard to the above captioned matter, pursuant to State v. Thompson, 57 Wn. App. 688, 790 P.2d 180 (1990)[, *aff'd sub nom State v. Greenwood*, 120 Wn.2d 585, 845 P.2d 971 (1993)].

     3.     The Court reviewed both State v. Huffmeyer, 145 Wn.2d 52, 32 P.3d 996 (2001) and State v. Thompson, *Id.*, and found Thompson to be more analogous to the above captioned matter on the basis that Thompson pertained to a defendant serving a sentence in another county on an unrelated matter, instead of being held in another county awaiting sentencing on an unrelated matter as in Huffmeyer.

Clerk's Papers (CP) at 76.

### III. ADDITIONAL CONTINUANCES; MOTION TO DISMISS FOR SPEEDY TRIAL VIOLATIONS

Between November 15 and December 16, the trial court[3] granted four more continuances at the State and/or defense counsel's requests; Saunders objected to each continuance and refused to sign any of the orders continuing the trial.[4] On January 3, 2011, the trial court allowed the State to amend the charges, expanding the period during which Saunders did not report to March 24, 2010 through May 6, 2010.

On January 4, 2011, Saunders filed a pro se motion to dismiss for time-for-trial and speedy-trial violations, objecting to the continuances the trial court granted on September 23, 2010; November 15, 2010; December 7, 2010; December 13, 2010; and December 16, 2010. He asserted that these continuances violated his CrR 3.3 time-for-trial and state and federal constitutional speedy-trial rights. The trial court subsequently granted three more continuances.[5]

---

[3] Several different judges granted these continuances.

[4] We describe the individual continuances in more detail below.

[5] Again, we describe these continuances in more detail below.

The trial began on May 9, 2011. On the first day of trial, the trial court granted Saunders's request to represent himself. But the trial court denied Saunders's request for standby counsel.[6]

After the trial court granted Saunders the right to proceed pro se, Saunders argued his January 4, 2011 motion to dismiss. Although Saunders did not refer to any specific continuance, he argued that "all of the said continuances" were improper under CrR 3.3 and the state and federal constitutions. Verbatim Report of Proceedings (VRP) (May 10, 2011) at 52. In response, the State discussed the continuances granted on the following days: (1) September 23, 2010; (2) November 15, 2010; (3) December 7, 2010; (4) December 13, 2010; (5) December 16, 2010; (6) January 3, 2011; (7) March 24, 2011; and (8) May 5, 2011. Saunders, however, clarified that he was not challenging the January 3, 2011 and March 24, 2011 continuances, which were based on a key witness's unavailability due to medical issues.

The trial court denied Saunders's January 4, 2011 motion to dismiss. The trial court found that each continuance at issue was in the interest of the administration of justice and that Saunders had failed to articulate any actual prejudice to his ability to present his defense.

IV. TRIAL, CONVICTION, SENTENCING

At trial, the State presented testimony and documentary evidence that, after first registering as transient, Saunders had reported weekly but that he did not register after March 24,

---

[6] We describe Saunders's motion for stand by counsel in more detail below.

2010.[7] The State presented copies of Saunders's weekly registration forms from December 30, 2009, through March 17, 2010. The next registration form the State presented was dated June 19, 2010, which stated that Saunders was then "incarcerated" and was in the DOC's custody in Snohomish County. VRP (May 10, 2011) at 146; Ex. 17. The June 19, 2010 registration form also noted that Saunders had last registered on March 17 as a "transient" in Pierce County. VRP (May 10, 2011) at 146; Ex. 17. The record custodian testified that Saunders's "sex registration packet" did not contain any documents showing that he had registered between March 17 and June 19. VRP (May 10, 2011) at 147-48.

Detective Curtis Wright of the Pierce County Sheriff's Office testified that he had investigated Saunders's registration status when the "sex offender unit" contacted him after Saunders failed to register on March 24. VRP (May 10, 2011) at 159, 163. During his investigation, the last registration form Detective Wright found was Saunders's March 17 registration. On cross-examination, Saunders questioned Detective Wright about whether he was aware of Pierce County's ever losing or misplacing anyone's registration paperwork. The detective responded that this did happen but that such occurrences were rare. He also testified that the county also provided the registrant with a "card" so the registrant would also have "proof" of registration if the county lost or misplaced any records. VRP (May 10, 2011) at 166.

---

[7] The trial court also admitted copies of previous judgments and sentences showing that Saunders had previously been convicted for failing to register as a sex offender five times before March 24, 2010. Saunders did not object to the admission of this evidence.

Saunders's supervising community corrections officer (CCO), Jeffery T. Haberman, also testified for the State. CCO Haberman testified that Saunders had been registered as a transient and that he had been required to report weekly. On March 18, Saunders gave a urine sample that tested positive for methamphetamine and then "failed to report to the [DOC]." VRP (May 10, 2011) at 172. When CCO Haberman checked with Pierce County, it informed him that Saunders had last registered on March 24, and was "due back to register" on March 31 because he was still registered as transient.[8] VRP (May 10, 2011) at 173. Haberman testified that as of April 1, Saunders was not compliant with his registration requirement.

Saunders, the sole defense witness, testified that he had registered on March 24, 2010, and that he had then reported that he then had an address and was no longer transient. Saunders further testified that if he had not been registered as a transient, he would have been required to report every six months rather than weekly. He asserted that the county had lost his March 24 registration showing that he was no longer a transient, but the only proof he offered was his CCO's testimony. On cross-examination, Saunders admitted that he did not have a "card" from the county showing that he had registered on March 24, 2010. VRP (May 11, 2011) at 202.

The jury found Saunders guilty of failing to register as a sex offender. The trial court sentenced Saunders to 57 months' confinement and 0 to 36 months of community custody. Saunders appeals his conviction and sentence.

---

[8] CCO Haberman testified that he could not recall who had told him that Saunders was still registered as a transient after March 17, 2010, because it was "such a long time ago." VRP (May 10, 2011) at 173.

No. 42179-8-II

ANALYSIS

I. First Motion To Dismiss for Untimely Arraignment and Time-for-trial Violation

Relying on *State v. Striker*, 87 Wn.2d 870, 557 P.2d 847 (1976), and *State v. Greenwood*, 120 Wn.2d 585, 845 P.2d 971 (1993), Saunders first argues that the trial court erred when it denied his first motion to dismiss on speedy arraignment and time-for-trial grounds. He contends that because the State did not demonstrate good faith and a diligent effort to locate and obtain him for trial, his constructive arraignment date was 14 days after the State filed the information, his CrR 3.3 time-for-trial period expired 90 days after that, and, thus, the September 23, 2010 continuance was untimely because it occurred 105 days after the State filed the information. We disagree.

A. Standard of Review

We review a trial court's decision on a motion to dismiss for abuse of discretion. *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997). A trial court abuses its discretion when the court's decision is manifestly unreasonable or based on untenable grounds or for untenable reasons; a trial court also violates this standard if it applies the wrong legal standard. *State v. Dixon*, 159 Wn.2d 65, 76, 147 P.3d 991 (2006); *State v. Hudson*, 150 Wn. App. 646, 652, 208 P.3d 1236 (2009). We review de novo whether a trial court incorrectly applied a court rule to a particular set of facts, because this is a question of law. *State v. Kindsvogel*, 149 Wn.2d 477, 480, 69 P.3d 870 (2003); *State v. Thomas*, 146 Wn. App. 568, 571, 191 P.3d 913 (2008), *review denied*, 165 Wn.2d 1046 (2009); *see also State v. Bobenhouse*, 143 Wn. App. 315, 322, 177 P.3d 209 (2008) ("We review the application of the [time-for-]trial rules de novo."), *aff'd*, 166 Wn.2d 881, 214 P.3d 907 (2009). In addition, we may affirm the trial court on any ground the record

8

supports. *State v. Costich*, 152 Wn.2d 463, 477, 98 P.3d 795 (2004); *State v. Ginn*, 128 Wn. App. 872, 884 n.9, 117 P.3d 1155 (2005), *review denied*, 157 Wn.2d 1010 (2006).

B. *Striker/Greenwood* Superseded; Arraignment and First Continuance Timely

Saunders's argument focuses on the *Striker/Greenwood* rule:

> As construed in . . . *Striker* and . . . *Greenwood*, former CrR 3.3 [2001] imposed a constructive arraignment date 14 days after the State filed an information if there was an unnecessary delay in bringing a defendant before the court. Under *Striker/ Greenwood*, a delay was unnecessary if the defendant was amenable to process and the State failed to exercise due diligence to bring the defendant before the court. [*State v. Hudson*, 130 Wn.2d 48, 54, 921 P.2d 538 (1996).]

*State v. Rafay*, 168 Wn. App. 734, 769, 285 P.3d 83 (footnotes omitted), *review denied*, 176 Wn.2d 1023 (2012), *petition for cert. filed*, No. 12-10772 (U.S. June 05, 2013). But the 2003 amendments to the CrR 3.3 time-for-trial rules[9] expressly preclude employing constructive commencement dates that are not provided by the plain language of the rule and supersede the *Striker/Greenwood* constructive arraignment rule. *See State v. Olmos*, 129 Wn. App. 750, 755-56, 120 P.3d 139 (2005) (amendments to rules superseded the constructive arraignment principles in *Striker* and *Greenwood*); *see also Rafay*, 168 Wn. App. at 769 n.32; *State v. Rookhuyzen*, 148 Wn. App. 394, 395, 200 P.3d 258 (2009) ("The 2003 amendments to CrR 3.3 and 4.1 eliminated the judicially created doctrine of constructive arraignment—the *Striker*

---

[9] CrR 3.3(a)(4) now provides that "[t]he allowable time for trial shall be computed in accordance with this rule. If a trial is timely under the language of this rule, but was delayed by circumstances not addressed in this rule or CrR 4.1, the pending charge shall not be dismissed unless the defendant's constitutional right to a speedy trial was violated." Additionally, CrR 3.3(h) provides that "[n]o case shall be dismissed for time-to-trial reasons except as expressly required by this rule, a statute, or the state or federal constitution."

rule."). Because Saunders's argument relies on the now inapplicable *Striker/Greenwood* rule, his argument fails.[10]

Furthermore, Saunders does not show that either his arraignment or the September 23, 2010 continuance was untimely under the current rules. CrR 4.1(a)(1) now provides that when a defendant is detained in jail,

> [t]he defendant shall be arraigned not later than 14 days after the date the information or indictment is filed in the adult division of the superior court, if the defendant is (i) detained *in the jail of the county where the charges are pending* or (ii) subject to conditions of release imposed in connection with the *same charges*.

Because Saunders was not detained in the Pierce County Jail until August 17 or subject to any conditions of release related to the new charges, the 14-day arraignment period did not start until August 17.[11] The trial court arraigned Saunders on August 18; thus, his arraignment was clearly timely under the applicable rule, and the September 23 continuance was clearly within the 60-day time-for-trial period. Accordingly, although we rely on different grounds than the trial court, Saunders has failed to show that the trial court erred when it denied his first motion to dismiss.

---

[10] Because we reject this argument on its merits, we do not address Saunders's related ineffective assistance of counsel claim. Additionally, to the extent Saunders also addresses this argument in his SAG, we do not address those arguments separately.

[11] Furthermore, CrR 3.3(a)(3)(v) provides:
> "Detained in jail" means held in the custody of a correctional facility *pursuant to the pending charge*. Such detention excluded any period in which a defendant is on electronic home monitoring, is being held in custody on an unrelated charge or hold, or is serving a sentence of confinement.

Because Saunders was being held in Snohomish County on an unrelated charge and was serving a sentence of confinement, the time from the date the State filed the information for the instant charge until he was transferred to Pierce County is excluded.

II. SECOND MOTION TO DISMISS FOR TIME-FOR-TRIAL VIOLATIONS

Next, in his pro se SAG, Saunders asserts that the trial court erred when it denied his January 4, 2011 motion to dismiss for time-for-trial violations, in which he challenged multiple continuances under CrR 3.3. This argument also fails.

A. Standard of Review

As we stated above, we review a trial court's decision on a motion to dismiss for an abuse of discretion. *Michielli*, 132 Wn.2d at 240. A review of the trial court's decision on Saunders's January 4, 2011 motion requires us to evaluate the continuances granted on the following dates: (1) September 23, 2010; (2) November 15, 2010; (3) December 7, 2010; (4) December 13, 2010; (5) December 16, 2010; and (6) May 5, 2011.

A trial court may grant a motion to extend time for trial when (1) the parties agree to the extension in writing and the agreement is signed by the defendant; or (2) upon motion of the court or any party, the continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense. CrR 3.3(f)(1), (2). If the court grants the continuance in the administration of justice, it must state its reason for granting the continuance on the record. CrR 3.3(f)(2). We review a trial court's decision to grant or to deny a CrR 3.3 motion for continuance for abuse of discretion. *State v. Williams*, 104 Wn. App. 516, 520-21, 17 P.3d 648 (2001). CrR 3.3 excludes properly granted continuances from the time-for-trial period. CrR 3.3(e)(3).

B. September 23, 2010 Continuance

On September 23, 2010, the State and defense counsel moved to continue the trial from the original October 11 trial date to allow defense counsel to prepare a motion to dismiss based

11

on a speedy arraignment/speedy trial issue that Saunders had advised defense counsel he wanted to pursue. Saunders objected to the continuance, apparently because he considered his arraignment to have been untimely. The trial court continued the trial to November 15.

When the trial court reset trial for November 15, 2010, the time-for-trial period was extended to December 15, 2010. *See* CrR 3.3(b)(5). Although the trial court marked the box on the order continuing trial that stated that the continuance was "upon agreement of the parties pursuant to CrR 3[.]3(f)(1)," it also noted that the continuance was to allow counsel additional time to prepare for trial and for the defense to file a motion to dismiss. CP at 7.

To the extent the trial court granted the continuance because it was an agreed-to continuance under CrR 3.3(f)(1), it erred. CrR 3.3(f)(1) provides that continuances may be granted if the parties agree to them in writing, but such agreements *must be signed by the defendant*. Saunders did not sign this continuance and, in fact, objected to the continuance. But the record and the reasons for the continuance the trial court stated in the order continuing trial demonstrate that the trial court also granted the continuance in the administration of justice, to allow counsel to prepare and to allow the defense to file a motion to dismiss.

"It is not a manifest abuse of discretion for a court to grant a continuance . . . to allow defense counsel more time to prepare for trial, even over defendant's objection, to ensure effective representation and a fair trial." *Williams*, 104 Wn. App. at 523 (citing *State v. Campbell*, 103 Wn.2d 1, 15, 691 P.2d 929 (1984), *cert. denied*, 471 U.S. 1094 (1985)). Here, defense counsel requested additional time to address issues Saunders himself had raised. And Saunders did not articulate how this continuance would prejudice his presentation of his defense. Thus, the trial court did not abuse its discretion in granting this continuance and extending the

12

trial date to November 15, 2010. Given this continuance, the allowable time for trial was extended to December 15, 2010, 30 days after the end of the excluded period. CrR 3.3(b)(5).

### C. November 15, 2010 Continuance

On November 15, 2010, the State and substitute defense counsel moved to continue the trial to December 7, based on defense counsel's unavailability because he was on military leave. Saunders objected to the continuance, apparently because he wanted the trial court to consider what he believed was a meritorious motion to dismiss based on an untimely arraignment. The trial court refused to hear the motion to dismiss at that time and continued the trial to December 7, 2010; Saunders refused to sign the continuance. The trial court based this continuance on defense counsel's unavailability due to Army Reserve obligations.[12] CP at 47. When the trial court continued the trial to December 7, the time-for-trial period was extended to January 6, 2011. *See* CrR 3.3(b)(5).

Although there is no case law directly addressing whether counsel's military reserve requirements can justify a continuance, it is well established that a trial court can grant a continuance to accommodate counsel's scheduled vacations. *See State v. Torres*, 111 Wn. App. 323, 331, 44 P.3d 903 (2002), *review denied*, 148 Wn.2d 1005 (2003). Because accommodating required military service is undoubtedly at least equally important as accommodating a vacation, and Saunders once again did not articulate how this continuance would prejudice his presentation

---

[12] The trial court also noted that defense counsel was unavailable because of a furlough. The record does not support this portion of the finding, but the record supports the finding that counsel was unavailable because of military service.

13

of his defense, we hold that trial court did not err in granting this continuance and extending the time-for-trial expiration date to January 6, 2011.[13] CrR 3.3(b)(5).

### D. December 7, 2010 Continuance

On December 7, substitute counsel for the State and defense counsel moved for another continuance. Counsel asserted that (1) the State's counsel was unavailable because she was in another trial that day; and (2) defense counsel needed to leave the state immediately to attend to a family member who had "collapsed" in another state. VRP (Dec. 7, 2010) at 3. As he had previously, Saunders objected to the continuance, apparently because he wanted the trial court to consider his motion to dismiss based on an untimely arraignment. The trial court continued the trial until December 13, 2010, and found that (1) the parties were in agreement, and (2) the continuance was in the administration of justice because the deputy prosecutor was in another trial and defense counsel would be unavailable. Saunders refused to sign the continuance.

Although the trial court erred in finding the parties were in agreement because Saunders did not sign the continuance or agree to it, the record supports the trial court's finding that the continuance was appropriate to accommodate the deputy prosecutor's being in another trial and defense counsel's family medical emergency. *See State v Cannon*, 130 Wn.2d 313, 326-27, 922 P.2d 1293 (1996) (holding two extensions proper where deputy prosecutor occupied in another trial); *State v. Jones*, 117 Wn. App. 721, 729, 72 P.3d 1110 (2003) (court may grant a continuance to accommodate unavailable or unforeseen circumstances such as defense counsel's

---

[13] Furthermore, even if the trial court erred in granting the continuance, the new December 7, 2010 trial date was within the time-for-trial period established by the September 23, 2010 continuance.

14

illness), *review denied*, 151 Wn.2d 1006 (2004). Additionally, Saunders did not articulate any prejudice that this short delay would cause. Accordingly, the trial court did not abuse its discretion in granting this short continuance and extending the time-for-trial expiration date to January 13, 2011.[14] CrR 3.3(b)((5).

### E. December 13, 2010 continuance

On December 13, 2010, the State again moved for a continuance because the deputy prosecutor was still in trial on another matter. The trial court found "good cause" for the continuance and reset the trial date to December 16. VRP (Dec. 13, 2010) at 3. Saunders objected to the continuance, apparently because he believed his motion to dismiss had merit, and he refused to sign the continuance. Again, the trial court did not err in granting this continuance because this short continuance was appropriate to accommodate the deputy prosecutor's need to be in another trial and Saunders did not articulate any prejudice this short delay would cause. *Cannon*, 130 Wn.2d at 326-27. This continuance extended the time-for-trial expiration date to January 16, 2011.[15]

---

[14] Furthermore, as with the previous continuance, even if the trial court erred in granting the continuance, the new December 13, 2010 trial date was within the time-for-trial period established by the September 23, 2010 continuance.

[15] Because this continuance and the September 23, 2010 continuance, which reset the time-for-trial period expiration date to December 15, 2010, were proper, the trial court would have properly extended the time-for-trial period to January 16, 2011, regardless of whether the November 15, 2010 or December 7, 2010 continuances were proper.

### F. December 16, 2010 continuance

On December 16, 2010, the State and defense counsel moved for a continuance to March 1, 2011, based on (1) the unavailability of jurors over the last two weeks in December; (2) defense counsel's "prescheduled furlough time" rendering him unavailable[16]; (3) numerous older "failure to register cases" assigned to defense counsel and State's counsel in January; and (4) the deputy prosecutor's prescheduled vacation from mid-February through mid-March. VRP (Dec. 16, 2010) at 2, 5. Saunders objected to the continuance, asserting that court congestion was not a valid reason to violate his speedy trial right.[17] The trial court continued the trial to January 3, 2011, with a new time-for-trial expiration date of March 2, 2011. Saunders refused to sign the continuance.

On the continuance order, the trial court noted that the continuance was based on the agreement of the parties under CrR 3.3(f)(1). But it also stated that the reason for the continuance was that defense counsel was unavailable because of a furlough. Again, because Saunders did not agree to the continuance, the trial court erred in finding that this was an agreed to continuance under CrR 3.3(f)(1). But the reasons stated in the continuance and the hearing records show that the trial court also continued the trial in the administration of justice to accommodate defense counsel's unavailability due to his furlough. The record also shows that Saunders never asserted that this delay would prejudice his ability to present his defense.

---

[16] Defense counsel stated that the furlough was based on county budget considerations.

[17] Saunders may have believed there were other grounds for not granting the continuance, but the trial court would not allow him to address the court directly and the above reason was the only reason defense counsel articulated.

Accordingly, the trial court did not abuse its discretion in granting this continuance. Furthermore, the new January 3, 2011 trial date was within the time-for-trial period established in the December 13, 2010 continuance, so any potential error was harmless.[18]

G. January 3, 2011 and March 24, 2011 continuances

On January 3, 2011, within the time-for-trial period established in the November 15, 2010 continuance, the State moved for another continuance based on the State's law enforcement officer witness's unavailability due to surgery. The trial court granted the continuance, setting the trial for March 24, 2011, and extending the time-for-trial expiration date to April 24, 2011. Saunders objected to the continuance, asserting that the witness was unnecessary, and refused to sign the continuance order. On March 24, the State moved for another continuance because the witness was still recovering from surgery. The trial court granted the continuance, in the administration of justice, and continued the trial to May 5, 2011; resetting the time-for-trial expiration date to Monday, June 6, 2011. Saunders objected to the continuance and refused to sign the continuance order.

Saunders did not, however, challenge the January 3, 2011 or March 24, 2011 continuances in his January 4, 2011 motion to dismiss; and at the May 10, 2011 hearing on that motion he clarified that he was not challenging these continuances. Furthermore, even if he had

---

[18] We note that the continuance states that the new expiration date for time to trial would be March 2, 2011. CrR 3.3(b)(5) extends the time-for-trial expiration date to 30 days after the excluded period, which would be February 2, 2011, not March 2, 2011, as the trial court indicated. But, because the trial court continued the trial again on January 3, 2011, and March 24, 2011, to accommodate a witness's medical condition and Saunders does not object to those continuances, this error is harmless.

challenged these continuances, we hold that the trial court did not abuse its discretion in granting these continuances to accommodate a witness's surgery and recovery.

### H. May 5, 2011 Continuance

Finally, on May 5, 2011, the court moved to continue the trial to May 9, based on courtroom unavailability. Saunders objected to the continuance and refused to sign the continuance order. It is not clear whether Saunders challenged this final continuance. Nevertheless, this continuance was well within the time-for-trial period established in the March 24, 2011 continuance; and the trial started May 9, 2011, which was also within the June 6, 2011 time-for-trial period established in the March 24, 2011 continuance.

Because the trial court did not abuse its discretion in granting these continuances, the trial court also did not err in denying Saunders's January 4, 2011 motion to dismiss for CrR 3.3 time-for-trial violations. Accordingly, this argument fails.

### III. CONSTITUTIONAL SPEEDY TRIAL

Saunders also appears to assert in his SAG that holding his trial nine months after his arraignment violated his federal and state constitutional rights. We disagree.

### A. Standard of Review

Both the United States Constitution and the Washington Constitution provide a criminal defendant with the right to a speedy public trial. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Our state constitution "requires a method of analysis substantially the same as the federal Sixth Amendment analysis and does not afford a defendant greater speedy trial rights." *State v. Iniguez*, 167 Wn.2d 273, 290, 217 P.3d 768 (2009). We review de novo constitutional speedy trial claims. *Iniguez*, 167 Wn.2d at 280.

18

## B. Constitutional Speedy Trial Standards

A defendant's constitutional rights to a speedy trial attach when a charge is filed or an arrest is made, whichever occurs first. *State v. Corrado*, 94 Wn. App. 228, 232, 972 P.2d 515, *review denied*, 138 Wn.2d 1011 (1999). Some pretrial delay is often "inevitable and wholly justifiable," *Doggett v. United States*, 505 U.S. 647, 656, 112 S. Ct. 2686, 2693, 120 L. Ed. 2d 520 (1992), and any "inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Barker v. Wingo*, 407 U.S. 514, 522, 533, 92 S. Ct. 2182, 2188, 2193-94, 33 L. Ed. 2d 101 (1972) (delay was "well over five years"). As first articulated by the United States Supreme Court in *Barker*, we consider: (1) the length of pretrial delay, (2) the reason for delay, (3) the defendant's assertion of his or her right, and (4) prejudice to the defendant. 407 U.S. at 530.

But to trigger this analysis, the defendant must first demonstrate that the "interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett*, 505 U.S. at 651-52 (quoting *Barker*, 407 U.S. at 530-31). We consider the duration of pretrial custody, the complexity of the charges, and the extent to which a case involves a reliance on eyewitness testimony. *Iniguez*, 167 Wn.2d at 292 (citing *Barker*, 407 U.S. at 531).

## C. Presumptively Prejudicial

In *Iniguez*, our Supreme Court found "presumptive[] prejudic[e]" based upon a delay of more than eight months. 167 Wn.2d at 291-92. The court found it important that (1) the defendant had remained in custody throughout this period; (2) the charges against him were not complex; and (3) such a lengthy delay "could result in witnesses becoming unavailable or their

19

memories fading," thus impairing his defense. *Iniguez*, 167 Wn.2d at 292. The court took pains to note that this eight-month delay was, however, "just beyond the bare minimum needed to trigger the *Barker* inquiry." *Iniguez*, 167 Wn.2d at 293.

Here, as in *Iniguez*, Saunders remained in custody pending trial, the charges against him were not complex, and the length of the delay was similar. But although the State's case against Saunders rested in part on eyewitness testimony, it also rested largely on documentary evidence. At best, there was some danger that some witnesses' memories would fade—in fact, Saunders now argues that the delay contributed to his CCO's being unable to remember what county employee had told him that Saunders had last registered on March 24, 2010, rather than March 17, 2010. The record reveals that the CCO's memory had faded and that he attributed this, at least in part, to the amount of time that had passed before trial. Thus, it appears that Saunders has met the threshold requirement for bringing his constitutional speedy trial claim, and we now turn to the four-pronged *Barker* test.

## D. *Barker* Test

First, we consider the length of pretrial delay. *Barker*, 407 U.S. at 530. The State filed the charges on June 10, 2010, and the State arraigned Saunders on August 18, 2010, just short of nine months before the trial. Given the simple charges, this much delay appears excessive and weighs in favor of Saunders. But we must also look to the reasons for this delay. *Barker*, 407 U.S. at 530. Here, as discussed above, the trial court granted several continuances to accommodate not only the State, but also Saunders himself (by allowing Saunders and his counsel extra time to file motions, accommodating defense counsel's need for time to prepare, and allowing for defense counsel's absence due to military service obligations). Additionally, a

20

substantial part of the delay, from January 3, 2011, through May 5, 2011, was to accommodate a witness's surgery and recovery. Given these continuances, the reasons for the delay do not weigh in favor of Saunders.

We next turn to whether Saunders asserted his constitutional right to speedy trial. *Barker*, 407 U.S. at 530. The record clearly shows that Saunders objected to every continuance, but the basis of his objections seems to have rested almost entirely on his initial claim that his arraignment was untimely under the criminal rules of procedure. Given, as we discuss above, that the basis of most of his objections was incorrect, this factor is at best neutral.

Finally, we examine whether the delay prejudiced Saunders. Because Saunders was apparently in custody the entire time the case was pending,[19] he was obviously subject to pretrial incarceration and to anxiety and worry. He has also shown that his CCO may have had some memory issues because of the length of the delay. Thus the prejudice prong weighs in Saunders's favor to some degree. But because there was also strong documentary evidence that Saunders had failed to register on March 24, 2010, or that if he had registered on March 24, 2010, he had still registered as a transient, that prejudice is not particularly strong.

Taken as a whole, the totality of the circumstances leads us to conclude that Saunders's constitutional speedy trial rights were not violated. The factors that weigh in his favor are the length of the delay and, possibly, prejudice, but these factors almost always weigh in the defendant's favor. Given that we hold that the continuances were all justified (and that Saunders

---

[19] Although nothing in the record specifically states that Saunders was in custody the entire time before trial, his judgment and sentence shows that the trial court credited him with 269 days for time served.

did not later object to the longest delay, which was needed to accommodate the witness's surgery), we find this factor dispositive. Accordingly, this argument also fails.

## IV. ADMISSION OF PREVIOUS JUDGMENT AND SENTENCES

Saunders next asserts in his SAG that the admission of the prior judgment and sentences showing that he had several previous failure-to-register convictions was improper and prejudicial. But Saunders failed to object to this evidence. Accordingly, he has failed to preserve this issue for review. RAP 2.5(a); *see also State v. Gresham*, 173 Wn.2d 405, 432-33, 269 P.3d 207 (2012) (evidentiary errors under ER 404(b) are not constitutional errors).

## V. NO STANDBY COUNSEL

Saunders also asserts in his SAG that he "believe[s] [his] rights were violated by 'not' being allowed stand by counsel." SAG (Statement of Facts Supporting Case Law) at 8. This argument also fails.

Criminal defendants have a constitutional right to waive counsel's assistance and represent themselves at trial. *State v. DeWeese*, 117 Wn.2d 369, 375, 816 P.2d 1 (1991). In certain circumstances, a pro se defendant may be entitled to have standby counsel provide technical assistance in the courtroom. Although appointing standby counsel at the defendant's request should be encouraged, this right is not absolute. *DeWeese*, 117 Wn.2d at 379; *State v. Christensen*, 40 Wn. App. 290, 297 n.2, 698 P.2d 1069, *review denied*, 104 Wn.2d 1003 (1985). We review the lower court's refusal to appoint standby counsel for abuse of discretion. *Accord, Locks v. Sumner*, 703 F.2d 403, 407-08 (9th Cir.), *cert. denied*, 464 U.S. 933 (1983).

Here, after the trial court allowed Saunders to proceed pro se, it asked him whether he wanted standby counsel. After speaking with defense counsel, Saunders stated that he would

like standby counsel who could assist him if he had questions about procedures, needed advice about questioning witnesses, or needed assistance with other matters. But nothing in the record shows that Saunders ever indicated he needed other standby counsel assistance during the course of the trial. The trial court fully examined Saunders about his need for standby counsel and determined that the only potential area he may need assistance in was in questioning defense witnesses. But it also found that because the only potential defense witness was Saunders himself, no assistance would be required; thus, the trial court denied the motion for standby counsel. Accordingly, we hold that the trial court did not abuse its discretion in refusing Saunders's request for stand by counsel.

## VI. SUFFICIENCY

In much of Saunders's SAG, he appears to assert that the evidence was insufficient to support his conviction because (1) the State did not prove that he did not register on March 24, 2010; and (2) the evidence established that he had changed his residential status on March 24, 2010, so he was not required to register on a weekly basis after that date. Again, we disagree.

Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). "'A claim of insufficiency admits the truth of the State's evidence'" and all reasonable inferences that a trier of fact can draw from the evidence. *Kintz*, 169 Wn.2d at 551 (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). Circumstantial evidence and direct evidence are equally reliable. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004), *abrogated in part on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177

23

(2004). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *Thomas*, 150 Wn.2d at 874-75.

Taking the facts in the light most favorable to the State, we note that the State presented evidence that, at best showed that Saunders registered on March 24, 2010, but that when he did so, he registered as a transient. Because the State's evidence also showed that Saunders was still a transient, he was required to report again a week later and that he failed to do so. This evidence is sufficient to support the conviction. Although Saunders testified that his March 24, 2010 registration also changed his transient status, his testimony was the only evidence of this, and the jury was not required to believe him. Accordingly, this argument fails.

## VII. NO SENTENCING ERROR

Finally, Saunders asserts in his SAG that his total sentence, including his community custody, exceeds the maximum sentence allowed for his offense. The trial court sentenced Saunders to 57 months of confinement and 0 to 36 months of community custody. But because Saunders's underlying felony sexual offense, second degree child rape, was a felony sex offense as defined in former RCW 9A.44.130(10)(a), this failure to register was a class B felony, with a statutory maximum of 10 years (120 months).[20] The maximum Saunders could serve under his current sentence imposed by the trial court is 93 months, well under the statutory maximum. Accordingly, this argument fails.

---

[20] We recognize that Saunders's previous convictions for failure to register as a sex offender were class C felonies, but the legislature amended RCW 9A.44.130 to increase this failure-to-register offense to a class B felony in 2008. *See* LAWS OF 2008, ch. 230 § 1.

No. 42179-8-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Johanson, A.C.J.

We concur:

_____
Hunt, J.

I concur in the result only:

_____
Quinn-Brintnall, J.